IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| LAURA L. MARTINEZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 12-3042-CV-S-ODS-SSA |

ORDER AND OPINION AFFIRMING
<u>COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was December 19, 1976, has a high school education, and completed two years of college. R. 61. She is a single mother of two children, ages 7 and 3. R. 69. Plaintiff has previous work experience as a laundry worker. Plaintiff initially alleged disability beginning April 10, 1998, based on Asperger's syndrome and depression. She later amended her alleged onset of disability to July 1, 2000. Although the medical history of record contains medical records before 2008, the Court will only address the medical evidence dated 2008 and beyond. It was agreed between the Parties that the relevant time period was September 2008 through the date of the ALJ's decision. R. 32.

On August 4, 2008, Plaintiff underwent a psychological evaluation performed by Sara Hollis, Psy.D., who diagnosed Plaintiff with Asperger's disorder, major depressive disorder (recurrent, mild), avoidant traits, possible endocrine disorder, and a GAF score

of 69.  R. 341.  Dr. Hollis noted that Plaintiff was high-functioning Asperger's, able to understand her own emotions, and had the advantage of a well-developed verbal base skill.  R. 341.  Plaintiff's weaknesses included her lack of understanding of social nuances and some global impairment in perceptual organization and was not able to makes conceptualize diagrams and drawing.  R. 341.

Plaintiff saw a licensed psychologist, Peter E. Jaberg, Ph.D., from April 3, 2009, to April 24, 2009.  R. 375-392.  Dr. Jaberg diagnosed Plaintiff with social phobia, depressed mood, and noted occupational problems, and a GAF score of 80.  R. 381.

Lester Bland, Psy.D., a non-examining, non-treating State agency psychologist, completed a psychiatric review technique dated May 27, 2009.  R. 393.  He opined that Plaintiff had non-severe affective disorders, anxiety-related disorders, autism and other pervasive development disorders, and a history of Asperger's diagnosis.  R. 393, 400.  Dr. Bland determined Plaintiff had a mild degree of limitation in: restriction activity of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace.  R. 401.

In 2009, Plaintiff enrolled in a career assistance program through Vocational Rehabilitation.  On August 6, 2009, Plaintiff reported to the Division of Vocational Rehabilitation that she did not plan to return to work until after her Temporary Assistance for Needy Families benefits expired.  R. 300.  On September 10, 2009, Plaintiff's enrollment in the program was placed in inactive status because she did not indicate interest in further job related services.  R. 297.

Plaintiff was referred to William Myers, Psy.D., for a neuropsychological assessment on September 30, 2009.  R. 408.  Dr. Myers diagnosed Plaintiff with generalized anxiety disorder, chronic post traumatic stress disorder, depressive disorder, panic disorder without agoraphobia, Asperger's disorder, and a GAF score of 55.  R. 414.

On August 18, 2010, Dr. Hollis completed a medical source statement regarding Plaintiff's conditions as of September 30, 2008 and before.  R. 416-420.  Dr. Hollis opined that Plaintiff was mildly limited in five areas.  Two of these areas included the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and the ability to accept instructions and to

2

respond appropriately to criticism from supervisors. R. 417-419. Dr. Hollis opined that Plaintiff was moderately limited in four areas including the ability to work in coordination with or proximity to others without being unduly distracted by them and the ability to get along with co-workers or peers without unduly distracting them or exhibited behavioral extremes. R. 418-419. Finally, Dr. Hollis opined that Plaintiff was markedly limited in four areas, three of which were the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to sustain an ordinary routine without special supervision. R. 418-419.

Plaintiff's medical records at St. John's Regional Medical Center in Joplin from August 13, 2009, to August 18, 2009, show that Plaintiff voluntarily admitted herself to the hospital because of depression, a possible nervous breakdown, and suicidal ideations. R. 498. Upon discharge, Plaintiff was prescribed Cymbalta and was urged to follow-up with Dr. Jaberg. R. 423.

Plaintiff saw Dr. Jaberg on 90 occasions from April 24, 2009 to August 2010 for ongoing treatment for insomnia, depressed mood, inappropriate behavior, ineffective communication, and coping skills. R. 544-688. Dr. Jaberg assigned GAF scores between the 70 and 80 range. *Id.*

On August 25, 2010, Dr. Jaberg completed a medical source statement for the period beginning September 30, 2008 and before. R. 690. Dr. Jaberg opined that Plaintiff was mildly limited in five areas, three of which included: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and the ability to sustain an ordinary routine without special supervision. R. 691-692. He found Plaintiff was moderately limited in the ability to interact appropriately with the general public. R. 692. Finally, Dr. Jaberg opined that Plaintiff was markedly limited in five areas, two of which included the ability to work in coordination with or proximity to others without being unduly distracted by them and the ability to accept instructions and to respond appropriately to criticism from supervisors. R. 691-692.

Dr. Jaberg also completed a second medical source statement on the same day based on Plaintiff's current condition. R. 694-698. He rated all of Plaintiff's abilities the exact same as in the first medical source statement, expect for one—Dr. Jaberg opined that Plaintiff was markedly limited in the ability to complete a normal workday and

3

Case 6:12-cv-03042-ODS   Document 19   Filed 05/10/13   Page 3 of 9

workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 692.

On November 17, 2010, the first administrative hearing was held. Plaintiff testified she was unable to work because of Asperger's, depression, panic attacks, and obsessive compulsive disorder. R. 66. She said her emotional conditions interfered with her work because she is slow, has trouble with her memory and concentration, and fast paced work puts her in a panic. R. 66, 74. Also, Plaintiff testified that she panics when she is in a crowd. R. 67-68.

With regard to Plaintiff's activities of daily living, Plaintiff sometimes watches television, but if it is on too long then she feels tense. R. 67. She cross stitches, uses the computer, and reads. R. 67. Plaintiff testified that she can only cross stitch for 30 minutes because she gets distracted. R. 71. Plaintiff prepares meals for her kids, does the dishes and laundry, takes out the trash, and grocery shops. R. 69-70. She also cleans the house, but sometimes needs help. R. 69. Plaintiff drives her daughter to school and her son to appointments. R. 71.

At the second administrative hearing, which was held January 27, 2011, a medical expert, Faren R. Akins, Psy.D., testified that the medical evidence of record was replete with discrepancies and contained contradictory information. R. 29. He was less certain in forming an opinion than he would be in most cases due to the discrepancies and contradictory information in the Record. Dr. Akins testified to less than marked limitations in activities of daily living and social functioning, but testified to marked limitations in concentration, persistence, and pace. R. 36.

The administrative law judge ("ALJ") issued his decision on April 5, 2011. At step one of the five-step sequential process, the ALJ determined Plaintiff engaged in substantial gainful activity from May 2000 through December 2002. R. 16-17. However, the ALJ determined that Plaintiff did not engage in substantial gainful activity from 2004-2005. R 17. At step two, the ALJ found Plaintiff had the following severe impairments: anxiety related disorders diagnosed as generalized anxiety, panic disorder without agoraphobia, social phobia, and posttraumatic stress disorder; affective disorder diagnosed as dysthymic disorder and depressive disorder; and Asperger's. R. 17. At step three, the ALJ concluded Plaintiff did not have a listed impairment. R. 17.

4

At steps four and five, the ALJ concluded Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple 1 and 2 step tasks and instructions with no more than occasional interaction with the public, co-workers, and supervisors.

R. 18. Next, the ALJ found, based on the vocational expert's testimony, that Plaintiff was capable of performing past relevant work as a laundry worker, which does not require the performance of work related activities precluded by Plaintiff's RFC. R. 22. Finally, the ALJ concluded Plaintiff was not disabled. R. 24.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

### A. The ALJ Properly Considered the Medical Source Opinions when Assessing Plaintiff's RFC

First, Plaintiff argues the ALJ erred in weighing the opinions of Dr. Hollis and Dr. Jaberg by assigning them "little weight" when they were entitled to "controlling weight." Plaintiff's Brief, at 35-44. The Court disagrees.

The ALJ has the responsibility to assess a claimant's RFC based on all the relevant evidence. *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). A treating physician's opinion will be given controlling weight if it is not inconsistent with the other substantial evidence in the record and is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Woods v. Astrue*, 780 F.Supp.2d 904, 912 (E.D.

5

Mo. 2011) (citing *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998)). A treating physician's opinion can be discounted where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

In this case, the ALJ properly assigned little weight to the medical source statement-mental completed by Dr. Hollis in August 2010. Dr. Hollis only saw Plaintiff once in August 2008, which was two years prior to her completion of the medical source statement. Dr. Hollis' opinion was not entitled to controlling weight because she was not a treating physician. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (three visits insufficient to make physician a treating physician). Further, the findings of the 2008 evaluation were inconsistent with the 2010 medical source statement. During the 2008 evaluation, Dr. Hollis assessed Plaintiff with a GAF score of 69 (which indicates mild symptoms), and noted that Plaintiff was high-functioning. R. 341. However, the 2010 medical source statement opined that Plaintiff had several moderate and marked limitations. R. 418-419.

The ALJ also properly assigned little weight to the opinion of Dr. Jaberg. Dr. Jaberg's medical source statement was inconsistent with his treatment notes, which showed GAF scores in the 70 to 80 range, indicating mild symptoms to no more than slight impairment. R. 544-688. In contrast, the medical source statement opines that Plaintiff had several marked impairments. R. 691-692. The ALJ also correctly pointed out that Dr. Jaberg's opinion was not supported by clinical findings, test results or measurements, or other non-subjective bases for his opinion.

The ALJ also pointed out the inconsistencies between the medical source statements completed by Dr. Hollis and Dr. Jaberg—another proper basis for assigning little weight to their opinions. For example, Dr. Hollis opined that Plaintiff was mildly limited in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and mildly limited in the ability to accept instructions and to respond appropriately to criticism from supervisors. R. 417-419. However, Dr. Jaberg opined that Plaintiff was markedly limited in those areas. R. 691-692. Dr. Jaberg also opined that Plaintiff was mildly limited in the ability to carry out

6

detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to sustain an ordinary routine without special supervision. R. 691-692. In contrast, Dr. Hollis opined that Plaintiff was markedly limited in those areas. R. 418-419.

Next, Plaintiff alleges that because the ALJ gave "little weight" to each mental healthcare provider, the RFC assessment was "necessarily the product of unsupported speculation." Plaintiff's argument is without merit. Defendant correctly points out that "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." Defendant's Brief, at 8 (quoting *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2007)). As previously discussed, the ALJ properly assigned "little weight" to Dr. Hollis' and Dr. Jaberg's opinions because of the inconsistencies in their medical source statements. Further, Dr. Akins' opinion was properly assigned little weight because he was a non-examining source and based his opinion on the medical evidence that contained discrepancies and contradictory information. R. 29, 36. Finally, Dr. Bland's opinion was given little weight because evidence was added to the record after he formed his opinion and he did not have the benefit of examining Plaintiff or hearing her testimony. These were all sufficient reasons for assigning little weight to the mental healthcare providers' opinions.

Finally, Plaintiff argues the ALJ should have further developed the Record by ordering a consultative examination and contacting her vocations counselor again at AO Employment Services. First, a consultative examination was not necessary. The ALJ was provided the medical reports from several physicians, medical testing, questionnaires completed by Plaintiff, and transcripts from two administrative hearings. This was sufficient evidence for the ALJ to render a decision on Plaintiff's RFC. *See Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001). Further, a consultative examination, as Defendant correctly points out, would not help the ALJ in assessing Plaintiff's RFC because opinions that the claimant is "disabled" or "unable to work" are opinions on the ultimate issue of disability and reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) and 416.927(d)(1). The Court concludes that the ALJ properly considered the medical source opinions in assessing Plaintiff's RFC.

7

## B. The ALJ Properly Analyzed Plaintiff's Credibility

Plaintiff argues the ALJ improperly analyzed her credibility. The Court disagrees. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; (7) the absence of objective medical evidence to support the claimant's complaints. *Id.*

Here, there is substantial evidence in the Record to support the ALJ's finding that Plaintiff's descriptions of the symptoms and limitations were generally inconsistent and unpersuasive and that her statements were not credible to the extent they were inconsistent with the RFC. First, Plaintiff's daily activities are inconsistent with her assertion of disability. Plaintiff testified that she cross stitches, uses the computer, prepares meals for her kids, does the dishes and laundry, takes out the trash, shops, and drives. R. 67, 69-71. "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)). Plaintiff argues the ALJ should not have considered that Plaintiff is able to care for two young children because it is "scant evidence of the ability to perform full-time work." Plaintiff's Brief, at 48 (quoting *Tang v. Apfel*, 205 F.3d 1084 (8th Cir. 2000)). However, the ALJ took numerous factors into consideration when assessing Plaintiff's credibility and did not discount it solely because she was able to care for her children.

Next, the ALJ properly considered Plaintiff's GAF scores in assessing Plaintiff's credibility. Plaintiff argues the ALJ should not have relied on Plaintiff's GAF scores because "GAF scores in the safe confines of the psychologist's office are hardly an

indicator of Ms. Martinez' ability to function in the competitive and stressful environment of the workplace." Plaintiff's Brief, at 47. Once again, Plaintiff's GAF scores were only one factor taken into consideration in assessing Plaintiff's credibility. Defendant correctly points out that "[a]lthough GAF scores are no determinative of the issue of disability, they 'may still be used to assist the ALJ in assessing the level of the claimant's functioning.'" Defendant's Brief, at 13 (quoting *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010)).

Finally, Plaintiff's work history also undermines her credibility. The Record shows that Plaintiff performed substantial gainful activity after her July 2000 amended alleged onset of disability and did not plan to return to work until after her Temporary Assistance for Needy Families benefits expires. R. 16-17, 300. Plaintiff also enrolled in a career assistance program through Vocational Rehabilitation, but was placed in inactive status because she did not indicate interest in further job related services. R. 297. The ALJ properly noted that these factors "raise questions as to whether the claimant's continuing unemployment is actually due to medical impairments and draws into question the claimant's credibility as a witness herein." R. 20.

Under the facts of this case, the Court cannot conclude that the ALJ improperly weighted Plaintiff's credibility. This Court will not substitute its opinion for that of the ALJ, who was in a better position to assess credibility. *Brown v. Charter*, 87 F.3d 963, 965 (8th Cir. 1996). Accordingly, the Court concludes the ALJ properly assessed Plaintiff's credibility.

### III. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: May 10, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT